IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERNEST WHOLAVER, JR.,** | : | CIVIL ACTION NO. 1:11-CV-164 |
| | : | |
| Petitioner | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | THIS IS A CAPITAL CASE |
| **JOHN E. WETZEL**, *et al.*, | : | |
| | : | |
| Respondents | : | |

## MEMORANDUM

Petitioner Ernest Wholaver moves the court for leave to conduct discovery in support of his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. For the reasons that follow, we will grant in part and deny in part Wholaver's motion.

### I.  Factual Background and Procedural History

The facts underlying Wholaver's conviction, as related by the Pennsylvania Supreme Court, are as follows:

> [I]n July 2002, Appellant, Ernest R. Wholaver, Jr., was charged with multiple sexual offenses for alleged conduct involving his two daughters, Victoria and Elizabeth, the latter of whom was still a minor at the time the charges were lodged. On behalf of Elizabeth, [Wholaver's] wife, Jean Wholaver, obtained an order under the Protection From Abuse Act, which included provisos that [Wholaver] was evicted from the family's Middletown residence, with no right or privilege of entry, and was prohibited from possessing or acquiring firearms. [Wholaver] subsequently took up residence with his mother, father, and younger brother, Scott Wholaver, in Cambria County.
>
> Just after midnight on December 24, 2002, [Wholaver] set out for the Middletown residence with Scott Wholaver.

> While his brother waited in the vehicle about a block away, [Wholaver] approached the house; cut telephone and other wires leading to it; forcibly gained entry; and shot Jean, Victoria, and Elizabeth to death with a pistol, leaving Victoria's nine-month-old girl, Madison, alive but alone and unattended. [Wholaver] and his brother then drove to Clearfield County, where [Wholaver] discarded the pistol, a shotgun and other potentially incriminating items at a remote location.
>
> Following the discovery of the bodies and Madison (who survived) approximately twenty-eight hours after the killings, police obtained search warrants for the Middletown residence to gather evidence. They later executed warrants to search [Wholaver's] person, his vehicle, and the Cambria County home where he was living. [Wholaver] was arrested and charged, *inter alia*, with three counts of first-degree murder, and the Commonwealth furnished notice that it intended to pursue imposition of the death penalty.

Commonwealth v. Wholaver, 903 A.2d 1178, 1180 (Pa. 2006) (internal citation omitted).  The sexual offense charges were subsequently consolidated with the murder charges for trial.  See id.  The jury convicted Wholaver of the three capital murder charges and related offenses, but acquitted him of the sexual offenses.  See id. at 1181.  After the penalty phase of trial, the jury returned a verdict of death on each capital count.  See id.  The Pennsylvania Supreme Court twice affirmed Wholaver's convictions and death sentence on direct appeal,[1] see Wholaver, 903 A.2d 1178; Commonwealth v. Wholaver, 989 A.2d 883 (Pa. 2010), and the Supreme Court of the United States twice denied *certiorari*, see Wholaver v. Pennsylvania, 549 U.S. 1171 (2007) (mem.); Wholaver v. Pennsylvania, 562 U.S. 933 (2010) (mem.).

---

[1] A second direct appeal was permitted upon *nunc pro tunc* reinstatement of appellate rights previously deemed to have been waived.

Wholaver initiated this federal habeas corpus action in January 2011 by moving for appointment of counsel, a stay of execution, and leave to proceed *in forma pauperis*. We granted his motion, appointed the Capital Habeas Unit of the Federal Community Defender for the Eastern District of Pennsylvania as counsel, and set a schedule for further proceedings. On August 2, 2011, Wholaver filed a *pro se* petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. § 9541 *et seq.*, in the Dauphin County Court of Common Pleas. The PCRA court dismissed Wholaver's *pro se* petition with instructions to appointed counsel to file a counseled PCRA petition on Wholaver's behalf. On August 31, 2011, on appointed counsel's motion, we stayed further proceedings in this court while Wholaver exhausted his state court remedies.

Wholaver filed a counseled PCRA petition in September 2011, raising roughly two dozen claims. The PCRA court dismissed all but four of those claims without an evidentiary hearing, and dismissed the remaining claims after taking evidence over the course of two evidentiary hearings. At various times throughout the PCRA proceedings, Wholaver moved the PCRA court for discovery. The court allowed Wholaver access to two juror questionnaires (for Marie Maltese and Ellen Vliet) and ordered the Commonwealth to turn over all Brady material for, *inter alia*, jailhouse informants Robert Marley, James Meddings, and Steve Stephens; the PCRA court otherwise denied Wholaver's discovery requests.

Wholaver appealed the denial of PCRA relief to the Pennsylvania Supreme Court. While Wholaver's appeal was pending, he protectively filed a petition for writ of habeas corpus with this court pursuant to 28 U.S.C. § 2254, to

preserve his statute of limitations. In January 2018, the Pennsylvania Supreme Court affirmed the PCRA court. Wholaver then filed a successive PCRA petition; the PCRA court dismissed that petition as well, and the Pennsylvania Supreme Court affirmed the PCRA court in May 2020.

Wholaver filed a status report with this court advising that state proceedings had concluded, and we thereafter issued orders lifting the stay in this case and instituting a schedule for discovery motion practice. Wholaver timely filed the instant motion for leave to conduct civil discovery, seeking to conduct discovery on six of the 21 claims raised in his habeas petition. The motion is fully briefed and ripe for disposition.

**II.    Legal Standard**

Rule 6 of the Rules Governing Section 2254 Cases provides that a judge may, "for good cause," authorize a habeas petitioner to conduct discovery. See 28 U.S.C. § 2254, Rule 6(a). Good cause exists when "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." See Bracy v. Gramley, 520 U.S. 899, 908-09 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)); see also Han Tak Lee v. Glunt, 667 F.3d 397, 404 (3d Cir. 2012) (citing Williams v. Beard, 637 F.3d 195, 209 (3d Cir. 2011)). Rule 6(a) strikes a balance: it does not permit "fishing expedition[s]," see Williams, 637 F.3d at 210-11 (citation omitted), but it also does not require a petitioner to prove that "the additional discovery would *definitely* lead to relief," see Randolph v. Beard, No. 06-CV-901, 2014 WL 6065887, at *3 (M.D. Pa. Nov. 13, 2014) (Conner, C.J.) (quoting Payne v. Bell, 89 F. Supp. 2d 967, 970 (W.D.

4

Tenn. 2000)) (emphasis added).  The scope and extent of discovery in a given case are matters vested to the discretion of the district court.  <u>Bracy</u>, 520 U.S. at 909.

Rule 6(a) adopts the discovery devices available under Rule 26 through Rule 37 of the Federal Rules of Civil Procedure.  <u>See</u> 28 U.S.C. § 2254, Rule 6(a); <u>see also id.</u>, advisory committee's note to 1976 adoption.  Those devices include, *inter alia*, depositions; requests for production of documents, other physical material, and electronically stored information; physical and mental examination; and written interrogatories.  <u>See generally</u> Fed. R. Civ. P. 27-37.

## III.  <u>Discussion</u>

Wholaver asks the court to permit him to conduct discovery in connection with Claims I, III through VI, and VIII of his habeas petition.  He seeks discovery of a laundry list of more than two dozen sweeping categories of documents, as well as depositions of the state-court prosecutor, two detectives, and a juror.  We find

that Wholaver has established good cause for some, but not all, of his discovery requests.[2]

### A. Claim I Discovery Request

Wholaver asserts two theories in Claim I. He contends, *first*, that the state court violated his constitutional rights by denying him the assistance of several experts needed to mount an adequate defense, and *second*, that appellate counsel rendered ineffective assistance in litigating this issue. (See Doc. 34 ¶¶ 30-59). Wholaver limits his discovery request to his claims regarding court-appointed clinical psychologist, Lawrence McCloskey. In his petition, Wholaver alleges the state court "depart[ed] from conventional methods for appointing . . . experts in Dauphin County" by (1) rejecting his proposed forensic psychiatrist and instead unilaterally selecting and appointing Dr. McCloskey, who, according to Wholaver, was unqualified and inexperienced; (2) underfunding Dr. McCloskey; and then (3)

---

[2] Respondents argue cursorily that the Supreme Court's decision in Cullen v. Pinholster, 563 U.S. 170 (2011), effectively bars discovery in this case, since we cannot consider new evidence when determining whether a state court's resolution of a claim was contrary to or an unreasonable application of federal law. (See Doc. 67 ¶ 9); see also Pinholster, 563 U.S. at 181. Respondents allocate a single sentence to this argument and cite no authority beyond Pinholster itself. (See Doc. 67 ¶ 9). Because respondents failed to develop this argument, we deem it to be abandoned. We note, however, that we find persuasive the growing number of decisions that have declined to apply a Pinholster bar to capital habeas discovery under similar circumstances. See, e.g., Williams v. Wetzel, No. 11-4681, 2021 WL 1224130, at *3-4 (E.D. Pa. Mar. 31, 2021) (collecting cases and refusing to apply Pinholster to prohibit discovery in capital habeas case raising Brady claim); Gibson v. Wetzel, No. 11-4550, 2016 WL 1273626, at *2-3 (E.D. Pa. Mar. 31, 2016) (same and noting Third Circuit case law, predating Pinholster, distinguishing Rule 6(a)'s good-cause standard from substantive restrictions of Section 2254(d) (citing Williams, 637 F.3d at 221 n.14)). We defer resolution of whether and to what extent evidence revealed in discovery may be used by Wholaver in these proceedings until the appropriate juncture.

interfering with Dr. McCloskey's assessment by dictating the assessment tools to be used. (See Doc. 34 ¶¶ 31-37, 45-58; see also Doc. 64 ¶ 18). Wholaver claims the state court's appointment order—which instructed Dr. McCloskey to complete his assessment of Wholaver using "assessment tools outlined in the proposal of March 30, 2004, and provide a written report of his findings"—substituted the court's judgment for the independent judgment of Dr. McCloskey. (See Doc. 34 ¶ 35). Wholaver further claims the Commonwealth recognized the "irregularity" of the appointment scheme and asked the court to reconsider its approach, suggesting the court instead "issued amended Orders granting the defendant up to the maximum fee in the particular field to retain an expert of his own choosing." (See id. ¶ 45).

     Wholaver's discovery request for Claim I is simple: he seeks only the March 30, 2004 proposal. (See Doc. 64 ¶ 22). He asserts that there is no transcript or document in the state-court record dated March 30, 2004; that it is unclear what document the court was referring to; and that it is not even known whether the court, Dr. McCloskey, or someone else entirely authored the proposal that was to govern the assessment. (See id. ¶¶ 24-25). Wholaver explains exactly what he is seeking, his request is narrowly tailored to his constitutional claim, and he offers specific factual allegations to support it. Respondents, for their part, offer no response to this particular request. We conclude that Wholaver has shown good cause for discovery of the March 30, 2004 proposal referenced in the appointment order for Dr. McCloskey.

### B. Claim III Discovery Requests

In Claim III of his habeas petition, Wholaver asserts trial counsel was ineffective in failing to challenge both the admissibility and the weight of forensic document examiner Kersten Jackson's conclusions as well as for failing to present an independent defense expert. (See Doc. 34 ¶¶ 83-102). Jackson testified at trial that, based on her evaluation of certain documents, she believed to a reasonable degree of scientific certainty that Wholaver had authored a letter soliciting the murder of an individual named Frank Ramos. (See Doc. 64-2 at 122). Wholaver alleges, *inter alia*, that trial counsel should have challenged the admissibility of Jackson's expert opinion. (See Doc. 34 ¶ 95). To support this claim, he requests discovery of Jackson's *curriculum vitae* as of the time of trial; all of Jackson's lab notes and bench notes concerning the forensic document examination; any logs, lab notes, or bench notes pertaining to steps taken by Jackson in conducting the handwriting comparison and analysis; and "[a]ll documents reflecting or recording reviews, quality control documents, and method validation records prepared in conjunction with" her forensic document examination. (See Doc. 64-1 at 3).

This request for discovery, unlike the first, is unparticularized and overbroad. More problematically for Wholaver, it lacks requisite factual support. Wholaver does not offer specific factual allegations tending to show that Jackson was unqualified or that her methodology was unsound. See Bracy, 520 U.S. at 908-09; Han Tak Lee, 667 F.3d at 404. He offers only the conclusory assertion that trial counsel should have challenged the reliability of Jackson's handwriting analysis because other courts and some researchers around the time of trial had begun to

8

"question[] the assumptions upon which the field was built and cast doubt upon the admissibility and weight" of such evidence. (See Doc. 34 ¶ 90; see also id. ¶¶ 91-94). Wholaver essentially asks us to allow him to try to discover his way into a potential ineffective assistance of counsel claim. A "fishing expedition" of this nature is not permitted under Rule 6(a). See Williams, 637 F.3d at 210-11 (citation omitted). We will deny Wholaver's discovery request as to Claim III.

### C. Claim IV Discovery Requests

In Claim IV of his petition, Wholaver asserts, *inter alia*, that the Commonwealth violated Brady v. Maryland, 373 U.S. 83 (1963), and Napue v. Illinois, 360 U.S. 264 (1959), by failing to disclose the full extent of the cooperation of government witness James Meddings and by failing to correct Meddings' false testimony about the extent of his cooperation. (See Doc. 34 ¶¶ 122-125). Wholaver alleges that motions filed in Meddings' federal court case reveal that his cooperation began months before he said it did during his trial testimony and that his statement that he had never worked "undercover" is belied by his later admission to being an informant in an unrelated case. (See id. ¶¶ 108, 110-112). According to Wholaver, Meddings was assured that, in exchange for his cooperation, his mother and fiancé would not be charged despite being implicated in Meddings' criminal activities. (See id. ¶ 113; Doc. 64 ¶ 74). Wholaver posits that this undisclosed information went to the heart of his pretrial motion to suppress—in which he argued Meddings was acting as a government agent at the time he elicited information from Wholaver— and would have served as valuable impeachment evidence at trial. (See Doc. 64 ¶¶ 39-44, 77-78).

To support his <u>Brady</u> and <u>Napue</u> claims, Wholaver requests discovery of any documents concerning Meddings' interaction with law enforcement officials involved in this case or in his federal case, or interaction between those officials, with respect to his cooperation in this or any other case. (<u>See</u> Doc. 64-1 at 4). He also requests discovery of documents pertaining to any visits law enforcement officials involved in this case had with Meddings while he was housed at Dauphin County Prison, including date, length, and purpose of the visits, as well as all documents regarding Meddings' custodial status within, and movement in and out of, Dauphin County Prison. (<u>See id.</u>)

Wholaver has shown good cause for discovery of some of these documents. The first three categories go directly to Wholaver's <u>Brady</u> and <u>Napue</u> claims—that Meddings' cooperation began earlier and was more extensive than was disclosed—and he has articulated specific allegations to support his request for discovery of those documents. So too for any documentation of visits law enforcement officials involved in prosecuting this case made to Meddings at Dauphin County Prison while Wholaver's case was pending, to the extent that information is not already included in the first three categories of requested documents. However, we will deny Wholaver's request for documents pertaining to Meddings' custody status within, and movement in or out of, Dauphin County Prison, as Wholaver has not established good cause for discovery of that information within the context of Claim IV.

### D. Claim V Discovery Requests

Wholaver asserts another <u>Brady</u> violation in Claim V. He avers that, in May 2017, while PCRA proceedings were pending, he and his counsel learned that the Investigation Discovery Channel had aired a story about his case entitled "Murders Under the Mistletoe." (<u>See</u> Doc. 34 ¶¶ 126, 129; <u>see also</u> Doc. 64 ¶ 49). According to Wholaver, the program features three individuals involved in his case—Detective David Sweitzer, Detective Brian Walborn, and Dauphin County District Attorney Francis Chardo ("DA Chardo")—"discussing the evidence and investigation into the murders of Jean Wholaver and her two daughters." (<u>See</u> Doc. 64 ¶ 52; <u>see also</u> Doc. 34 ¶¶ 126-127, 129-133). Wholaver avers the three men discussed their investigation into a man named George Wagner (referred to as "Stephen Chapman" during the program) who they considered a potential suspect based on, *inter alia*, rumors of a possible romantic relationship between Wagner and Jean Wholaver. (<u>See</u> Doc. 64 ¶¶ 52-58). The narrator provides additional details about the Wagner lead that Wholaver speculates must have come from Commonwealth sources, including information that Jean Wholaver had sold six firearms to Wagner the day before the murders. (<u>See</u> <u>id.</u> ¶¶ 52, 54). Wholaver asserts that, while the Commonwealth did disclose "some information" about Wagner prior to trial, the rumored affair and other reasons for believing him to be a suspect were never disclosed, in violation of Wholaver's rights under <u>Brady</u>. (<u>See</u> <u>id.</u> ¶ 65; <u>see also</u> Doc. 34 ¶¶ 137-139).

Wholaver lodges a scorched-earth discovery request based on this program, seeking the following: all documents provided by respondents to the Investigation Discovery network or others involved in making the "Murders Under the Mistletoe"

11

program, and all documents provided by the network or others involved with the program to respondents; all documents and video or audio recordings, including outtakes, provided by the network to respondents; all documents respondents reviewed or relied on in making the program; all documents regarding respondents' investigation of Wagner as a potential suspect; and certain documents relating to the alleged firearms transaction between Jean Wholaver and Wagner. (See Doc. 64-1 at 4-5). Wholaver also seeks to depose DA Chardo and both detectives. (See id. at 6).

Wholaver's discovery request is sweeping in scope and disproportionate to the narrow Brady claim it purports to buttress. We find that Wholaver has shown good cause for just a handful of the items sought in this request: specifically, any documents that would constitute Brady evidence (*e.g.*, any documents that are in the Commonwealth's possession and speak to the Commonwealth's suspicion of Wagner and basis therefor), including any evidence provided to the Investigation Discovery network potentially implicating Wagner in the murders. These materials are relevant to Wholaver's Brady claim, and his request for discovery is sufficiently supported by specific allegations to this extent.

The balance of Wholaver's request, however, is again nothing more than an impermissible fishing expedition. See Williams, 637 F.3d at 210-11 (citation omitted). He has established no basis for discovery of *all* documents generated in relation to the Investigation Discovery program, regardless of whether those documents pertain to Wagner's status as a suspect. Nor has he established good cause for depositions of DA Chardo, Detective Sweitzer, and Detective Walborn.

Indeed, the bulk of the statements made during the program with which Wholaver takes issue were made by the unidentified narrator, not by the three individuals he seeks to depose.³ We decline to authorize depositions of these individuals based solely on Wholaver's speculation that the narrator's commentary must have been based on Commonwealth evidence. (See Doc. 64 ¶ 52). Accordingly, we will grant in part and deny in part this aspect of Wholaver's discovery motion.

### E. Claim VI Discovery Requests

In Claim VI of his petition, Wholaver alleges that the Commonwealth failed to disclose Brady information that could have been used to impeach the credibility of three jailhouse informants—Meddings, discussed *supra*, as well as Robert Marley and Steve Stephens—who testified at trial. (See Doc. 34 ¶¶ 141-160). For each of these individuals, Wholaver identifies the information he believes was improperly suppressed, including, *inter alia*, evidence that investigators assured Meddings, in exchange for his cooperation, that his mother and fiancé would not be charged for their complicity in his criminal activities; that Marley had previously cooperated with law enforcement; and that Stephens was on probation when he

---

³ (See Doc. 64 ¶ 54 ("*According to the narrator*, Mr. Wagner was seen at the Wholaver house the day before the murders. Petitioner's wife gave him six handguns to sell, and 'investigators can't help but wonder if [Wagner] held one of them back and used it on Jean and her daughters' because 'maybe he and [Petitioner's wife] were having an affair and she pushed him to leave his wife and he got angry." (alterations in original) (emphasis added)); id. ¶ 56 ("Again, *according to the narrator*, when law enforcement asked Mr. Wagner to turn over the weapons from Mr. Wholaver's wife for analysis, he claimed he recently sold them at a local flea market, but could not remember the gun buyer's name, which the investigators 'find even more suspicious.'" (emphasis added))).

13

provided information to police about this case and on parole when he testified at trial. (See id. ¶¶ 141-157; Doc. 64 ¶¶ 74-76). Wholaver also speculates that three jailhouse informants who did not testify at trial—Andre West, Wilson Talevera, and John Tharret—may have been promised or received benefits in exchange for their information, which, in Wholaver's view, "would . . . be[] indicative of a pattern and practice of rewarding cooperation." (See Doc. 64 ¶ 81).

Wholaver levies yet another far-reaching discovery request in an effort to substantiate this claim. Wholaver seeks "[a]ll documents in the Dauphin County District Attorney's file and the police homicide file for this case, *including, but not limited to*, documents regarding favorable treatment discussed with, offered to, or received by" West, Talevera, and Tharret in exchange for information provided in this case or in Stephens' case. (See Doc. 64-1 at 5-6 (emphasis added)). There is simply no factual basis in Wholaver's petition or in his motion to support discovery of the Commonwealth's entire case file. Nor is there adequate support for the more nuanced aspect of this first request—information about nontestifying informants West, Talevera, and Tharret. Wholaver's request for information about these three individuals is premised solely on speculation that they *may* have received benefits and is too far attenuated from his Brady claim. We will thus deny this aspect of Wholaver's discovery request.

Wholaver has established good cause as to one aspect of this request, however, to the extent he seeks documents relating to Marley's prior cooperation. In this respect, Wholaver seeks only what he would have been entitled to receive at

14

trial under <u>Brady</u> and its progeny.[4]  The discovery as to Marley is narrowly tailored to the facts alleged about him, *viz.*, that he cooperated with authorities on at least two other occasions.  And Wholaver points to specific facts—including the PCRA hearing testimony of a former Commonwealth narcotics agent about Marley's prior cooperation—to support his request.  (<u>See</u> Doc. 64-1 at 6; <u>see also</u> Doc. 64 ¶ 75; Doc. 34 ¶¶ 147-148).  We will accordingly grant Wholaver's motion to the extent he seeks certain information from respondents about Marley's prior cooperation.

### F.     Claim VIII Discovery Request

Finally, in Claim VIII of his petition, Wholaver avers that a juror empaneled for his trial did not answer honestly on her juror questionnaire and that, as a result, Wholaver was denied his right to a fair and impartial jury.  (<u>See</u> Doc. 34 ¶¶ 175-184).  Wholaver alleges that a female juror falsely answered "no" to the juror question asking whether she or any family member or close friend had ever been the victim of a crime but later admitted to his investigator "that she had a family member who was sexually abused by another family member."  (<u>See</u> <u>id.</u> ¶¶ 175-176).  This juror testified during PCRA proceedings that she could not recall the conversation with

---

[4] Specifically, Wholaver seeks all documents relating to Marley's prior cooperation with the narcotics unit of the Pennsylvania Attorney General's Office or any other law enforcement office before or during Wholaver's prosecution; a copy of Marley's informant files with those agencies if within respondents' possession; and documents contained in the electronic files of former Commonwealth narcotics agent Ronald Diller provided to his supervisor upon his retirement, again, if in respondents' possession.  (<u>See</u> Doc. 64-1 at 5).  We note that Wholaver does not request additional documents as to Meddings beyond those addressed *supra* for Claim IV, and he seeks no discovery materials as to Stephens.

Wholaver's investigator. (See id. ¶¶ 177-178). In an affidavit submitted to the PCRA court, another juror, Craig Stein, attested to the following:

> I was a juror in the matter of the Commonwealth v. Ernest Wholaver in Dauphin County. I recall that during deliberations on the guilt/innocence portion of the case, one female juror was very, very upset and disclosed that someone close to her had been the victim of inappropriate sexual behavior. She was emotional and some of the other female jurors became emotional too. They felt Mr. Wholaver should have been convicted of the rape charges.

(See Doc. 56 at 1431).

Wholaver now seeks leave to depose Stein to establish his claim that he was denied his constitutional right to a fair and impartial jury.[5] Wholaver has shown good cause for some discovery as to Stein; Wholaver's allegations, if "fully developed, [may] be able to demonstrate that he is . . . entitled to relief" on his claim of juror misconduct. See Bracy, 520 U.S. at 908-09 (quoting Harris, 394 U.S. at 300). However, Wholaver has not shown good cause for the *type* of discovery requested. Indeed, Wholaver has not provided any explanation for requesting to depose Stein in lieu of less intrusive means of discovery. (See Doc. 64 ¶¶ 89-93; see also id. ¶ 93 (asserting only that "Petitioner has established good cause to depose juror Craig Stein.")). Written interrogatories will suffice to obtain the additional information Wholaver seeks from Stein. In the exercise of our discretion, we will deny

---

[5] Respondents offer no opposition to this request, except to posit that the request is deficient for failure to include proposed questions. (See Doc. 67 ¶ 8). We agree with Wholaver that there is no requirement in Rule 6(a) that a petitioner seeking leave to depose a witness first submit proposed deposition questions for the court's review. Cf. 28 U.S.C. § 2254, Rule 6(a) (requiring "proposed interrogatories and requests for admission" if petitioner is seeking those forms of discovery).

Wholaver's request to depose Stein, but will grant Wholaver leave to propose interrogatories for the court's review as contemplated by Rule 6(b).  See 28 U.S.C. § 2254, Rule 6(b).

## IV.    Conclusion

We conclude that Wholaver has established good cause for some of the discovery requested in connection with his habeas petition, as set forth in detail herein.  We will thus grant in part and deny in part Wholaver's motion for leave to conduct civil discovery.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    September 28, 2021